Decision. And we'll hear the next matter on today's argument calendar, Greenberg v. Perfect Body Image 23912. Good morning, Your Honors. My name is Doreen Tyndell, and I'm here on behalf of the defendant appellant. As the court knows, the legal standard for attorney sees the Lanham Act is 15 U.S.C. Section 1117. And this court adopted the Octane Fitness case, which constitutes an exceptional case. And in the Octane case, they articulated practice such as frivolousness, motivation, objective reasonableness, both factual and legal, the need and the need in particular circumstances to advance consideration of compensation and deterrence. In the second sleepies, LLC 909 F3D 517, the circuit held that the foregoing list was non-inclusive, and does not displace other factors relevant to the inquiry. Am I right that district courts in the context of determining what qualifies as exceptional, an exceptional case, have extremely wide discretion and latitude? That is correct. Why? Why is this one of those unusual cases under the Lanham Act, where the district court in determining that this did not qualify as an exceptional case, was fell right outside of that very broad spectrum of discretion that we've said it has? So I believe, Your Honor, based upon the lack of documentation substantiation from Greenberg, which was discussed at length in the summary budget motions, that he was unable even at the outset to establish that his surname was constituted a secondary meaning. And the court had noted very lengthy list of the fact that Dr. Greenberg's statement was devoid of any proof, and that's in A317. His claims of media coverage consisted of scattered screenshots, purporting to be linked to articles from his own website and are self serving. Greenberg provided no data on commercial success or Greenberg's evidence is meager. Greenberg provided no evidence of listenership, did not include any citation to deposition testimony or a single factual affidavit. Substantiating his notoriety, he failed to meet the evidentiary burden required to establish secondary meaning. Am I, is it correct that within a relatively short time after this lawsuit began or was commenced, the marketing campaign stopped? The reason that yeah, that is correct. Is that also is it also correct that the district court pointed to that as one of the reasons for its conclusion that this did not qualify as an exceptional case? Correct. But Judge Verstein overlooked the fact and there is evidence in the record that the reason that was done was when we had gotten the Google data sheet, we sent it over to an expert who basically confirmed that my client paid in a little over 12 months $7,000. Only nine people contacted his page, but we couldn't prove that any out of 3,900 and something clicks over a year. Only nine people actually contacted Perfect Body, but there's no evidence whatsoever by us or the defendant that was provided to show that, in fact, any of them converted over to Perfect Body image. So there was no damages. In fact, I sent a letter after that to the defense attorney telling him, listen, there's no damages here. We would appreciate the faith you withdraw this lawsuit. With the only reason why my client is withdrawing, is ceasing the actual campaign is because he wasted $7,000 for a year and he has nothing to show for it. So from an, you know, a business economic perspective, it was not in Perfect Body's best interest to continue the use of the ad word. It didn't bring him any revenue. Am I correct that what appears when a person clicks on Dr. Greenberg and the ad that you paid for comes up that the first line says, Dr. Greenberg hyphen award winning laser treatments hyphen PerfectBodyLaser.com? Yeah, so it says ad next before Perfect Body Laser. It says ad. It says ad but then it says Dr. Greenberg award winning laser treatments Perfect Body. PerfectBodyLaser.com. Right? Underneath that, and it's Yeah, now I don't I'm I'm really puzzled by this. Because I don't understand how that could fail to to create a likelihood of confusion. Dr. Greenberg has nothing to do with Perfect Body Laser, right? The only connection between Dr. Greenberg and Perfect Body Laser is that Perfect Body Laser purchased the right to have its ad come up when somebody when somebody typed into the search box, Dr. Greenberg. That is, that is correct. And just why should how does that? How does that not create a likelihood of confusion? Where on the first line, it shows Dr. Greenberg's name together with Perfect Body Laser. Okay, so so the reason the court found that it did not create confusion is based upon the Polaroid factors. And the court found that number one, the URL for perfect for Dr. Greenberg says Dr. Steven T. Greenberg, MD, my client is not an MD. The word ad was before PerfectBodyLaser.com. When you click on it, it brings you directly to Perfect Body. Nowhere on Perfect Body's website at all is the name Dr. Greenberg plastic surgery. Why is Dr. Greenberg's name on this line that's exhibited to to the public? If I if I'm if I'm a member of the public, and I'm looking for Dr. Greenberg, and I type in Dr. Greenberg, then I get this thing that's shown to me that associates Dr. Greenberg's name. I mean, it would be one thing if you paid for the right to simply get your ad to come up if when I type in Dr. Greenberg, then I see an ad that says award winning laser treatments Perfect Body Laser, but doesn't mention Dr. Greenberg. But why does Dr. Greenberg's name? Why do you get the right to have Dr. Greenberg's name come up together with your ad in a manner that it seems to me inevitably suggests a likelihood of relationship between Dr. Greenberg and Perfect Body? So, again, as the Polaroid factors is what the court looks at, to the Polaroid factors are everything the Polaroid factors are very broad. So just saying the Polaroid factors. Yeah, so actually, they're not what they're kind of, they're very specific in that, you know, and in evaluating the Polaroid factors, you have to actually provide evidence and proof that you that that businesses was converted over to Perfect Body that went to Dr. Greenberg. And in this instance, it's important to point out that Greenberg primarily does plastic surgery, not non-invasive. My client does only non-invasive. Anyone looking for plastic surgery, look at PBI's website and see wait a minute, they don't offer breast, breast enlargement, they don't offer this. I don't see Dr. Greenberg's name. And the court held that, that the Dr. Greenberg, and enter requirement, it's an element, they have to provide evidence of damages of conversion. And Greenberg provided zero evidence, and just said it would cause confusion. It was there was nothing in the record that stated there was evidence that there was a likelihood of confusion. According to the magistrate's report, which the judge adopted in its entirety, they relied entirely on circumstantial evidence and making the unattainable beat. And there's no evidence of confusion. And judge, Judge Bernstein herself adopted that in its entirety, you have to prove this evidence of confusion at Jitnikar. And before that, you have to get to the threshold question of whether or not that surname established a secondary meeting. He didn't even pass that test. So the arguments that we've just been kicking back and forth would, if this were an appeal on the merits, that's where we would would be living. But but it seems that your burden here is a step higher, which is not only to establish that the trial court's analysis on the merits was well founded, but that the evidence was frivolous. And that the sort of common sense observation that Judge LaValle just described, isn't enough on its face to get over frivolousness without anything more. So to address the frivolousness, prior to this lawsuit, my client received a cease and desist letter. It was forwarded to my and Polaroid faxes, etc, etc. I did a search of Dr. Greenberg, if he had a trademark, he did not. I did my own investigation to see whether or not you mean he didn't have a registration. That's correct. But that means nothing, because then if he had secondary meeting, so then we did our own investigation to see if there was any secondary meeting, we came up with to the plaintiff's attorney prior to the lawsuit and said, listen, do some basic research. You don't he doesn't have, you know, a trademark. It's not illegal what my client's doing. There's no likelihood of confusion. That was that. Then we did discovery. In discovery, I did interrogatory specifically asking for proof of asserting. What I got back was this is not title. I asked for proof of anything which shows that he established secondary meaning and every answer was not applicable. This is a title. It's a professional title. So right then and there, I sent another letter saying, listen, you don't even establish the fact you're admitting here that you don't have a trademark. You don't have a secondary meaning. Please drop this frivolous lawsuit. No. Then when we got the Google research, and it showed that only nine people out of 3000 and change contacted my client and we don't need there's no proof that they even purchased services. We asked again, you have no damages, please withdraw this claim. The defendant moved for summary judge at motion after that with no evidence whatsoever. And the evidence they provided was, I mean, I wouldn't even characterize as circumstantial. It was basically the Google report, and pictures of doctor on on certain media that went directly to his website, and a television show that he's not even on his wife is the one on it. And so, to me, he was forcing my client to litigate this. When in fact, there was ample opportunity for a pre suit evaluation to make this determination. They weren't forcing your client to litigate your your client could also have just stopped doing what he asked you to my client did stop doing it. And because of the financial aspect, and I and they still continue to sit. When you refer to $7,000 in cost to your client initially, yes, two month interim period. Before you start the campaign, what is that $7,000 represent? Is that attorneys fees? What is it? Oh, no, no, that's what my client paid for the ad work for the campaign. Okay, that's correct. And how much are the attorney's fees that you're seeing? Oh, geez, I think it's 68,000 and change. Okay. All right. I think we have your argument. Well in mind, so we'll hear from your friend on the other side. Council for Dr. Greenberg, Mr. Millis. Thank you may please the court your honors. I do represent Mr. Greenberg, the athlete. You know, in many respects, while obviously there are citations and arguments based upon the other factors from octane fitness concerning how you evaluate this. You know, I think there's enough evidence here that plaintiff wants attorney's fees because they say they want and and again, they won. But but it's a far cry from winning and getting attorney's fees. I I almost analogize it analogize it's not in the brief, but I do a lot of civil rights work on the defense side. And under the Christian Berg decision, the court's aware that it is very difficult irrespective of the fact that the defense is a prevailing party in a discrimination type case or a 1983 type case to get attorney's fees simply by being the prevailing party. They'd have to prove it's frivolous what was brought in the first instance, which is the same standard that we have here. Why did you decide not to appeal? Your honor, there was a record in this case that was established by I'm not blaming, but it's a fact, an attorney who used to work for the firm that represented Mr. Greenberg. In retrospect, and hindsight is 2020, probably a better job could have been done to establish liability under the Lanham Act, so that we were in a position to move forward with Yes, I think I think that's I think that's an understatement. Well, yeah, you're saying that you're that you're that your colleague in the first instance, did a poor job of making a record. Your honor, I would try to be as politic as I possibly can. Yes, I understand. He didn't do enough in order to establish responsibility. But it's not the same thing to say that, because he didn't have enough evidence, because he didn't get the evidence of confusion, where he might have been able to do that. When he didn't dig into some of these doesn't need it doesn't need evidence of confusion, all he needs is to show likelihood of confusion. Right. And I think I, and I agree with your honest question there, you know, when you start from the premise that wait a minute, we have a situation where an established doctor is associated by the not an inch, a centimeter from this company that employs no doctors, does not perform anything our doctor does, clearly from on its face, it obviously had issues, but we know that the Lanham Act is complicated. We know there's a lot of things that have to be done. And some of those things just were not done. But that that being the case, there is no point on appealing. There is no point on fighting it at some point, every client has a right to say, look, we've achieved, you know, they've taken it off. In this situation, the judge has spoken, there's no point in taking any further, but it doesn't mean that the underlying claim was frivolous. That's the key here. You know, Dr. Judge Locke wrote a pretty hard opinion on this. He did. And, and, and, and, and the district court accepted it, which is not unusual when a magistrate works hard. Sometimes there are changes. Many times there were not, but he found three of the Polaroid factors in favor of the defendant, one in the favor of the plaintiff, and five that were undecided. So he made his ruling, and we lived with it. But when you look at the factors here, there was some measure of evidence, it just wasn't enough to carry the date of summary judgment or deny summary judgment to the plaintiff in this matter. But certainly, it was a good faith effort. The only bad faith shown here is, is what was done in the first instance, including Greenberg's name, right above this company that had no, no association with. That started it all off. Whether that comes into play in the legal argument, well, it's really not the point. We did something, my client took action when he saw a wrong being committed, that he was looking to be associated with this other company with not one doctor that doesn't perform the services that my doctor performs, or certainly, if they don't have medical professionals, not as well, assuming they could produce it, assuming they could do it at all. And that's what started all this. And that's what started all this. And when the decision came down, it was immediate that the appellate's position was, I'm entitled to premises now. Now I'm going to get my money back from my client because you took a position on this case, you fought my And while it's not a strict American rule here, the court has made it clear exceptional circumstances. And the district court judge lived this case. She conferenced it many, many times. She issued her ruling, not only in connection with the with the mediator, but all with with the magistrate, but also in connection with the attorney sees going into great detail. And of course, appellant can pick and choose those things that favor their argument that the factors warrant a finding in their favor. But there's plenty there, plenty there supporting our position that it wasn't frivolous. This is not an exceptional case. The United States District Court judge agreed with us. And as Judge Lara pointed out, the standard is very high in abuse of discretion in these matters. The district court judge is in the best position to make a determination as to whether or not a plaintiff in this sort of case, where exceptional standards were exceptional nature of the case is in fact a standard, whether or not they should receive attorney's these. So so I'm going to end early with that, because to me, that's the key to the case. Was there an abuse of discretion that would warrant the Second for further proceedings or whatever it may be. I respectfully submit, whether we like the decision or not, we lived with it. When it came down to the securities when it came down to the attorney sees decision, the judge were taught at it. She evaluated it and came to a conclusion that conclusion should stand. Thank you, Ronis. Thank you very much. I see the Council for the appellant collected not to ask for rebuttal. I have one I have one question for the Council for the appellant, which is do you have the option? Yeah. Did you have the option in purchase your client have the option in purchasing in purchasing what you purchased from Google? Did you have the option as to whether Dr. Greenberg name would appear the way it does? In other words, could you buy? Could you buy the ad that pops up that says award winning laser treatments, perfect body laser, or the inclusion of the name Dr. Greenberg? Was that your choice? Or was it Google's? Does Google simply impose that it's that's what you get. If you purchase your ad, you get you get the search the search word, followed by your your ad, you know, your answer to the question. I can't answer it. Oh, no, I was asking your address now. The Chanel that question is directed to you. Can you hear me now? Yes, yes. Yes. Okay. So, um, in fact, yes. In fact, Judge Locke would deny to somebody budget motion he did an ad word against my client. I'm sorry, I didn't understand my question. My question is, your client purchased the right to have its ad come up when a searcher typed in Dr. Greenberg. Now, when you when when a person is in the position of your client, seeking to have their ad come up, when a searcher searches for Dr. Greenberg, does the person buying the ad have a choice, whether the name whether Dr. Greenberg will appear on the line? Or is that just the form in which Google offers it and you have no choice, but to get it that way? Because it seems to me, there's a huge difference in terms of possible trademark infringement, between not necessary trademark infringement or unfair competition and likelihood of confusion. If you simply if you simply had had had gotten an ad that says award winning laser treatment, perfect body laser, when I type in Dr. Greenberg, there would be no likelihood of confusion. But if you have the choice of putting in Dr. Greenberg on the line, or in the ad in any place on the line or below. That's what creates the likelihood of confusion. I wonder, did your client have have a choice whether simply have its ad appear without Dr. Greenberg name appearing with it? Or was that your client's choice to have Dr. Greenberg's name appear there? So, all due respect, I don't understand your question. My client can have an ad ever anyone can when he purchased was an ad word. He could have it attached to and it's VR or DLC to or it's not Dr. Steven T. Greenberg MD. So please answer my question. I don't know the answer. I don't know. No, it's not that I don't understand the question. And I'm being very respectful. I really don't understand. The purpose of an ad word. Do you look at look at the line, look at the line that says, Dr. Greenberg hyphen award winning laser treatment hyphen perfect body laser.com. You see that? Looking at that look, okay. Now, my question is, would your client have been able to purchase its ad without the name Dr. Greenberg appearing in that first line so that the first line would simply say, when when when somebody types in Dr. Greenberg, what would pop up would be an ad for perfect body laser that would say award winning laser treatment perfect body laser and would not refer to Dr. Greenberg. Can you understand that? I understand that. All right, the answer the question, could you purchase that? Was it I said your client's option to put the name Dr. Greenberg in there? Or is that the only form in which Google offers this service of ad pop up? I have no idea. Okay, thank you. Thank you very much. We'll reserve decision. Thank you. Thank you. Thank you.